# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SARA RABINOWITZ, individually and on behalf of all others similarly situated,<br><br>              Plaintiff,<br><br>    v.<br><br>GOTO FOODS LLC and AUNTIE ANNE'S FRANCHISOR SPV LLC,<br><br>              Defendants. | Civil Action No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>JURY TRIAL DEMANDED |

Plaintiff Sara Rabinowitz ("Plaintiff") brings this action on behalf of herself and all others similarly situated against Defendants GoTo Foods LLC ("GoTo Foods") and Auntie Anne's Franchisor SPV LLC ("Auntie Anne's") (collectively, "Defendants"). Plaintiff makes the following allegations pursuant to the investigation of her counsel and based upon information and belief, except as to the allegations specifically pertaining to herself, which are based on personal knowledge.

## NATURE OF THE ACTION

1. This is a class action seeking monetary damages, restitution, and declaratory and injunctive relief from Defendants arising from their unfair and deceptive practice of offering food and beverages for sale from Auntie Anne's food trucks in New York City without displaying the price of any item offered for sale, in violation of New York City's Truth-in-Pricing Law, N.Y.C. Admin. Code § 20-708. By concealing its prices, Defendants deprive consumers of the ability to know what an item costs before committing to purchase it, prevent comparison shopping, and cause consumers to pay more than they otherwise would.

2.     Defendant Auntie Anne's Franchisor SPV LLC is the franchisor of the Auntie Anne's system, the well-known soft pretzel chain with more than 1,000 locations nationwide. Defendant GoTo Foods LLC is the parent of Auntie Anne's and is an Atlanta-based platform company whose portfolio also includes Cinnabon, Carvel, Jamba, McAlister's Deli, Moe's Southwest Grill, and Schlotzsky's. Defendants share the exact same principal address: 5620 Glenridge Drive NE, Atlanta, Georgia 30342.

3.     In recent years, Defendants have expanded the Auntie Anne's brand beyond the traditional shopping-mall footprint by deploying Auntie Anne's food trucks throughout New York City (the "Trucks").

4.     The Trucks' menu boards display images and descriptions of pretzels, dips, lemonades, and other items—but no prices. No stamp, tag, label, sign, or menu board on or near the Trucks discloses the price of any item. A consumer only learns what an item costs after the consumer has waited in line, placed an order, and, in many instances, after the order has already been prepared.

5.     For more than fifty years, New York City law has required every retail seller to tell consumers the price of an item *before* they buy it. Section 20-708 of the New York City Administrative Code, part of the City's Truth-in-Pricing Law, provides that "[a]ll consumer commodities, sold, exposed for sale or offered for sale at retail . . . shall have conspicuously displayed, at the point of exposure or offering for sale, the total selling price exclusive of tax" by means of a stamp, tag, or label attached to the item, or a sign at the point of display.[1]

6.     The failure to post prices is not a mere technicality. New York courts have squarely held that "offering [items] for sale without the price being posted (Administrative Code § 20-708)"

---

[1] N.Y.C. Admin. Code § 20-708, available at
https://codelibrary.amlegal.com/codes/newyorkcity/latest/NYCadmin/0-0-0-35367.

constitutes a deceptive trade practice. *See Matter of City Line Auto Mall, Inc. v. Mintz*, 42 A.D.3d 407, 408 (1st Dep't 2007) (sustaining findings that a retailer "engaged in deceptive trade practices" by, *inter alia*, "offering vehicles for sale without the price being posted (Administrative Code § 20-708)").

7.    The reason for the rule is simple: price is the single most important piece of information in any retail transaction. Conspicuously displayed prices allow consumers to decide whether to buy at all, to compare one seller's prices against another's, and to hold sellers to the prices they advertise. Concealing prices until the point of sale strips consumers of each of these protections.

8.    Defendants dictate and control the practice at issue. The priceless menu boards displayed on the Trucks are designed, mandated, and approved by Defendants.

9.    Defendants' acts and/or omissions constitute violations of N.Y. Gen. Bus. Law § 349 and § 350, and have unjustly enriched Defendants.

10.    For these reasons, Plaintiff seeks relief in this action individually, and on behalf of all other purchasers from Defendants' New York City food trucks, for actual and/or statutory damages, restitution, reasonable attorneys' fees and costs, and injunctive relief.

**JURISDICTION AND VENUE**

11.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 class members, the aggregate amount in controversy exceeds $5,000,000, exclusive of interest, fees, and costs, and at least one class member is a citizen of a state different from Defendants.

12.     This Court has personal jurisdiction over Defendants because Defendants conduct substantial business within New York, including controlling, advertising, and profiting from Trucks that operate in this District, and because the claims asserted herein arise out of that conduct.

13.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this District, the purchases of Defendants' Products by Plaintiff and class members.

**PARTIES**

14.     Plaintiff Sara Rabinowitz is an individual consumer who, at all times material hereto, was a citizen and resident of New York, New York. In or around November 2025, Plaintiff purchased pretzel nuggets from an Auntie Anne's food truck located in or near Soho in New York, New York. Neither the Truck's menu board nor any stamp, tag, label, or sign on or near the Truck displayed the price of the item Plaintiff purchased, or of any other item offered for sale. Plaintiff learned the price only at the point of payment, when she was charged $11.97. That price was materially higher than the price posted for the same item at Auntie Anne's brick-and-mortar locations, and higher than Plaintiff would have agreed to pay had the price been conspicuously displayed before she ordered. Had the Truck displayed its prices as required by law, Plaintiff would not have purchased the item, would have purchased the items for less, or would have purchased comparable items elsewhere for less.

15.     Defendant Auntie Anne's Franchisor SPV LLC is a Delaware limited liability company with its principal place of business at 5620 Glenridge Drive NE, Atlanta, Georgia 30342. Auntie Anne's Franchisor SPV LLC is the franchisor of the Auntie Anne's system, including the Auntie Anne's-branded food trucks that operate in New York City, and prescribes and enforces

the uniform standards—including truck design, exterior signage, vehicle wrapping, menu boards, and marketing—with which every Auntie Anne's food truck must comply.

16.    Defendant GoTo Foods LLC is a Delaware limited liability company with its principal place of business at 5620 Glenridge Drive NE, Atlanta, Georgia 30342. GoTo Foods is the parent and owner of Auntie Anne's and develops, directs, and controls the brand standards, marketing, and franchise programs.

17.    Defendant Auntie Anne's Franchisor SPV LLC and Defendant GoTo Foods LLC share the same principal address.

18.    Each of the Defendants acted jointly to perpetrate the acts described herein. At all times relevant to the allegations in this matter, each of these Defendants acted in concert with, with the knowledge and approval of, and/or as the agent of the other Defendant within the course and scope of the agency, regarding the acts and omissions alleged.

## RELEVANT FACTUAL ALLEGATIONS

### I.    *New York City's Truth-in-Pricing Law Requires Conspicuous Price Display*

19.    New York City's Consumer Protection Law declares that "[n]o person shall engage in any deceptive or unconscionable trade practice in the sale, lease, rental or loan or in the offering for sale, lease, rental, or loan of any consumer goods or services, or in the collection of consumer debts." N.Y.C. Admin. Code § 20-700.

20.    As part of the same chapter of the Administrative Code governing unfair trade practices, New York City enacted the Truth-in-Pricing Law, N.Y.C. Admin. Code §§ 20-707, et seq.

21.    The Truth-in-Pricing Law defines "consumer commodity" broadly to mean "any article, good, merchandise, product or commodity of any kind or class produced, distributed or

offered for retail sale for consumption by individuals, or for personal, household or family purposes." N.Y.C. Admin. Code § 20-707. Only drugs, medicines, and cosmetics are excluded. Prepared food and beverages sold at retail—including the pretzels, dips, and lemonades sold from Defendants' Trucks—are consumer commodities.

22.    Section 20-708, titled "Display of total selling price by tag or sign," provides in full:

> All consumer commodities, sold, exposed for sale or offered for sale at retail except those items subject to section 20-708.1 of this code, shall have conspicuously displayed, at the point of exposure or offering for sale, the total selling price exclusive of tax by means of (a) a stamp, tag or label attached to the item or (b) by a sign at the point of display which indicates the item to which the price refers, provided that this information is plainly visible at the point of display for sale of the items so indicated.

23.    Accordingly, § 20-708's conspicuous price-display requirement applies with full force to every item Defendants offer for sale from the Trucks.

24.    New York courts have held that the failure to post prices as required by § 20-708 is itself a deceptive trade practice. In *Matter of City Line Auto Mall, Inc. v. Mintz*, the Appellate Division confirmed that "substantial evidence" supported the agency's findings that a seller "engaged in deceptive trade practices" where, among other things, the seller was "offering vehicles for sale without the price being posted (Administrative Code § 20-708)." 42 A.D.3d 407, 408 (1st Dep't 2007).

25.    A reasonable consumer in New York City is entitled to expect—and does expect—that a licensed retail food vendor complies with the law and will disclose its prices before the point of payment. A vendor's failure to display any prices communicates, falsely and misleadingly, that its prices are ordinary, unremarkable, and in line with the prices posted by law-abiding competitors.

## II.    Hiding Prices Causes Consumers To Pay More

26.    Consumers choose what to buy, and from whom, based on price. When prices are conspicuously displayed, consumers can comparison shop, and sellers must compete on price. When prices are concealed until the point of sale, that competitive discipline disappears: the seller, and only the seller, knows the price, and the consumer cannot make an informed decision. As the Federal Trade Commission has recognized in the analogous drip-pricing context, when the true price of a product is revealed only late in the transaction, consumers "are forced to incur higher total search and cognitive costs" or "make an incomplete, less informed decision" that results in a more costly purchase.[2]

27.    The economic literature confirms that price-concealment techniques cause consumers to pay more for the same goods than they would pay if prices were transparently disclosed up front. The White House Council of Economic Advisers has found that hiding the true price of a product "harm[s] consumers and actively undermine[s] competition by making it impractical for consumers to compare prices, a linchpin of our economic system."[3]

28.    Price display requirements like § 20-708 exist precisely to prevent this conduct. A seller that refuses to display any prices deprives consumers of the material information they need at the only time it is useful—before they commit to the purchase.

---

[2] Mary W. Sullivan, Economic Issues: Economic Analysis of Hotel Resort Fees, Bureau of Econ., Fed. Trade Comm'n (Jan. 2017), https://www.ftc.gov/system/files/documents/reports/economic-analysis-hotel-resort-fees/p115503_hotel_resort_fees_economic_issues_paper.pdf.

[3] *The Price Isn't Right: How Junk Fees Cost Consumers and Undermine Competition*, THE WHITE HOUSE (Mar. 5, 2024), https://bidenwhitehouse.archives.gov/cea/written-materials/2024/03/05/the-price-isnt-right-how-junk-fees-cost-consumers-and-undermine-competition/#:~:text=%5B2%5D%20Junk%20fees%20harm%20consumers,linchpin%20of%20our%20economic%20system.

### III.    *Auntie Anne's Food Trucks Conceal Their Prices*

29.    Auntie Anne's is one of the most recognizable snack brands in the United States. Founded in 1988, the chain sells soft pretzels, pretzel nuggets, dips, lemonades, and related items from more than 1,000 locations, historically concentrated in shopping malls, airports, and other retail centers.

30.    Defendants have expanded into mobile vending. Defendants advertise and promote Auntie Anne's food trucks in New York City, which Defendants even promote on the official Auntie Anne's website.[4]

31.    The Trucks bear Defendants' uniform trade dress: Auntie Anne's blue-and-white branding, the Auntie Anne's logo, and professionally produced exterior menu boards displaying photographs and names of the items offered for sale—Original Pretzels, Cinnamon Sugar Pretzels, Pretzel Nuggets, dips, lemonades, and more.

32.    The Trucks' menu boards, however, do not display the price of any item. Nor is any price displayed by stamp, tag, label, or sign anywhere on or about the Trucks (*see* Figure 1, next page).

---

[4] Auntie Anne's Food Truck – Brooklyn, https://locations.auntieannes.com/ny/brooklyn/brooklyn-food-truck.

*Figure 1*



33.     The total selling price of each item is therefore not "conspicuously displayed, at the point of exposure or offering for sale," as § 20-708 requires. A consumer standing at the Truck's service window has no way to learn what any item costs other than to ask the employee, or to order and be told the price at payment.

34.     The prices actually charged at the Trucks are materially higher than the prices posted for the same items at Auntie Anne's brick-and-mortar locations in New York City, and

materially higher than the prices Defendants would be able to charge if they were conspicuously displayed in advance as the law requires.

35.     This practice is uniform. Throughout the class period the Trucks operating in New York City have consistently omitted prices from their menu boards and displayed no prices by any other means, in a common practice dictated by the standardized menu board designs Defendants prescribe.

### IV.     *Defendants Dictate And Control The Trucks' Priceless Menu Boards*

36.     Every Auntie Anne's food truck operates pursuant to franchise agreements with, and under uniform standards prescribed by Defendants.

37.     Defendants' own publicly filed Franchise Disclosure Documents leave no doubt about the extent of their control over the Trucks' appearance, signage, and menu boards. It states, under the heading "Trailer/Truck Costs": "If you operate a Concession Shop, you must purchase a food truck or trailer from an Approved Supplier and must customize the interior and exterior unit to comply with our Standards. This estimate includes the cost of fit-out, exterior signage and vehicle wrapping, the generator, license tags, and related permits."[5]

38.     In other words, no Auntie Anne's food truck may operate unless its exterior— including its signage and menu boards—conforms to Defendants' uniform "Standards." Defendants design, prescribe, approve, and require the very menu boards that omit prices.

39.     Defendants also prescribe the menu itself, the branding, and the marketing materials used by the Trucks; require operators to follow Defendants' operations manuals; and reserve and exercise the right to inspect and enforce compliance with their Standards.

---

[5] Auntie Anne's Franchise Disclosure Document, available at
https://www.franchimp.com/?page=pdf&f=108148_2024.pdf.

10

40.     Defendants profit directly from the practice: Defendants collect royalties and other fees calculated as a percentage of every sale made from the Trucks. The higher the prices extracted from consumers at the Trucks' windows, the more Defendants earn.

41.     Defendants also directly advertise and promote the Trucks to New York consumers, including on the official Auntie Anne's website and social media channels.

42.     By designing, mandating, approving, and profiting from the Trucks' priceless menu boards, Defendants directly participated in, and are primarily responsible for, the deceptive acts and practices alleged herein. In the alternative, the Trucks' operators acted as Defendants' agents with respect to the signage and menu board practices at issue, which Defendants dictated and controlled.

### V.     Plaintiff's Experience

43.     In or around November 2025, Plaintiff visited an Auntie Anne's food truck located in or near Soho in New York, New York.

44.     The Truck's menu board displayed photographs and descriptions of the items offered for sale, but no prices. No stamp, tag, label, or sign on or near the Truck displayed the price of any item, as depicted in Figure 1, above.

45.     Reasonably believing, based on the absence of any posted prices and Auntie Anne's reputation as an affordable snack brand, that the Truck's prices would be consistent with the prices posted at Auntie Anne's ordinary retail locations, Plaintiff ordered pretzel nuggets.

46.     Only at the point of payment did Plaintiff learn that the price was $11.97— materially more than the posted price for the same item at Auntie Anne's brick-and-mortar locations. Having already waited in line and ordered, and with the item already prepared, Plaintiff paid the demanded price.

47.     Had the Truck conspicuously displayed its prices before Plaintiff ordered, as required by law, Plaintiff would not have purchased the item, would have purchased less, or would have purchased comparable items elsewhere for less. Plaintiff accordingly paid more than she otherwise would have paid.

48.     Plaintiff continues to encounter Defendants' Trucks in New York City and would purchase from them in the future if she could trust that their prices were lawfully displayed, but absent injunctive relief she has no way of knowing the price of any item before ordering and remains at risk of being overcharged.

## CLASS ACTION ALLEGATIONS

49.     Plaintiff seeks to represent a class defined as all persons who purchased one or more items from an Auntie Anne's food truck in New York City during the applicable statute of limitations period (the "Class").

50.     Excluded from the Class are Defendants, any entity in which Defendants have a controlling interest, and Defendants' officers and directors.

51.     Plaintiff reserves the right to amend or modify the Class definition with greater specificity or further division into subclasses or limitation to particular issues based upon discovery or further investigation.

52.     Members of the Class are so numerous that their individual joinder herein is impracticable. On information and belief, the Trucks transact with hundreds of consumers each day of operation, and members of the Class number at least in the tens of thousands. The precise number of Class members and their identities are unknown to Plaintiff at this time but may be determined through discovery, including from Defendants' and their franchisees' point-of-sale and

payment records. Class members may be notified of the pendency of this action by mail, email, and/or publication.

53.   Common questions of law and fact exist as to all members of the Class and predominate over questions affecting only individual Class members. Common legal and factual questions include, but are not limited to:

(a)   whether the Trucks' menu boards and premises displayed the total selling price of the items offered for sale;

(b)   whether Defendants engaged in the wrongful conduct alleged herein;

(c)   whether the failure to conspicuously display prices violates N.Y.C. Admin. Code § 20-708;

(d)   whether Defendants designed, mandated, approved, and controlled the Trucks' menu boards and signage;

(e)   whether Defendants intentionally and knowingly misrepresented material facts with an intent to mislead consumers; and

(f)   whether Defendants were unjustly enriched;

54.   The claims of the named Plaintiff are typical of the claims of the Class in that Plaintiff, like all Class members, purchased items from Defendants' Trucks that displayed no prices, and sustained damages as a result of Defendants' uniform wrongful conduct.

55.   Plaintiff is an adequate representative of the Class because her interests do not conflict with the interests of the Class members she seeks to represent, she has retained competent counsel experienced in prosecuting class actions, and she intends to prosecute this action vigorously. The interests of Class members will be fairly and adequately protected by Plaintiff and her counsel.

56.     The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Class members. Each individual Class member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendants' liability. Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent or contradictory judgments. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendants' liability. Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

## COUNT I
### Unjust Enrichment
### (On Behalf Of Plaintiff And The Class)

57.     Plaintiff incorporates by reference and re-alleges herein all paragraphs alleged above.

58.     Plaintiff brings this claim individually and on behalf of the members of the Class against Defendants.

59.     Plaintiff and members of the Class conferred benefits on Defendants by purchasing items from the Trucks, from which Defendants derived royalties, fees, and other revenues calculated as a percentage of every sale.

60.     Defendants have been unjustly enriched in retaining the revenues derived from purchases by Plaintiff and members of the Class. Retention of those monies under these circumstances is unjust and inequitable because Defendants concealed the prices of the items offered for sale from the Trucks, in violation of New York City law, and thereby extracted from

14

Plaintiff and members of the Class prices higher than they would have paid had prices been conspicuously displayed.

61. Because Defendants' retention of the non-gratuitous benefits conferred on them by Plaintiff and members of the Class is unjust and inequitable, Defendants must pay restitution to Plaintiff and members of the Class for their unjust enrichment, as ordered by the Court.

## COUNT II
### Violation Of N.Y. Gen. Bus. Law § 349
### (On Behalf Of Plaintiff And The Class)

62. Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

63. Plaintiff brings this claim individually and on behalf of the members of the Class against Defendants.

64. Under GBL § 349, "[d]eceptive acts or practices in the conduct of any business, trade or commerce" are unlawful.

65. Plaintiff and Class members are "persons" within the meaning of GBL § 349(h).

66. Each Defendant is a "person, firm, corporation or association or agent or employee thereof" within the meaning of GBL § 349(b).

67. Defendants' conduct is consumer-oriented: the Trucks sell food and beverages to the public at large on the streets of New York City, and the practice complained of—the omission of all prices from the Trucks' menu boards and premises—is uniform, standardized, and directed at every consumer who approaches a Truck.

68. Defendants engaged in deceptive acts and practices by offering consumer commodities for sale at retail without conspicuously displaying their total selling price, in violation of N.Y.C. Admin. Code § 20-708, and by charging prices materially higher than the prices posted at Auntie Anne's locations that comply with the law. The failure to post prices as required by §

15

20-708 is itself a deceptive trade practice. *See Matter of City Line Auto Mall, Inc. v. Mintz*, 42 A.D.3d 407, 408 (1st Dep't 2007).

69. Defendants' omission of price information is materially misleading. Price is material to every reasonable consumer. The Trucks' prices were information solely within Defendants' and their operators' possession, which consumers could not reasonably obtain before committing to a purchase, because no prices were displayed and the price of an order was revealed only at the point of payment.

70. Defendants' deceptive acts and practices were likely to and did mislead reasonable consumers, including Plaintiff, acting reasonably under the circumstances, and affect the public interest of consumers throughout New York City.

71. Plaintiff and Class members suffered ascertainable loss and actual injury as a direct and proximate result of Defendants' deceptive acts and practices in that they paid monies they otherwise would not have paid: they paid prices materially higher than the prices they would have paid had the total selling price of each item been conspicuously displayed before they ordered. Had prices been displayed, Plaintiff and Class members would not have purchased the items, would have purchased less, or would have purchased comparable items elsewhere for less.

72. Defendants committed the acts and practices alleged herein willfully and knowingly. Defendants designed and mandated the Trucks' menu boards, and knew or should have known that New York City law requires the conspicuous display of the total selling price of every item offered for sale at retail.

73. On behalf of herself and other members of the Class, Plaintiff seeks to enjoin the unlawful acts and practices described herein, to recover her actual damages or $50, whichever is

greater, treble damages up to $1,000 for Defendants' willful and knowing violations, reasonable attorneys' fees and costs, and any other just and proper relief available under GBL § 349.

## COUNT III
### Violation Of N.Y. Gen. Bus. Law § 350
### (On Behalf Of Plaintiff And The Class)

74.    Plaintiff incorporates by reference and re-alleges herein all paragraphs alleged above.

75.    Plaintiff brings this claim individually and on behalf of the members of the Class against Defendants.

76.    GBL § 350 provides that "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful."

77.    Under GBL § 350-a, "false advertising" means "advertising, including labeling, of a commodity . . . if such advertising is misleading in a material respect," taking into account not only affirmative representations but also "the extent to which the advertising fails to reveal facts material in the light of such representations."

78.    The Trucks' exterior menu boards, signage, vehicle wrapping, and branding—all designed, mandated, and approved by Defendants—constitute advertising within the meaning of GBL § 350. Defendants also advertise the Trucks to New York consumers on the Auntie Anne's website and social media channels.

79.    That advertising is misleading in a material respect. The Trucks' menu boards advertise Defendants' products with appetizing photographs, brand imagery, and item descriptions, while failing to reveal the single most material fact about each item: its price.

80.    Defendants' advertising was consumer-oriented and was likely to mislead a reasonable consumer acting reasonably under the circumstances, and did mislead Plaintiff and Class members.

17

81.   This misleading advertising has resulted in consumer injury and harm to the public interest.

82.   As a result of Defendants' false and misleading advertising, Plaintiff and Class members suffered economic injury because they paid monies they otherwise would not have paid—prices materially higher than they would have paid had the price of each item been disclosed before they ordered.

83.   By reason of the foregoing, Plaintiff and Class members seek to enjoin the unlawful acts and practices described herein, and to recover their actual damages or five hundred dollars, whichever is greater, treble damages up to $10,000 for Defendants' willful and knowing violations, reasonable attorneys' fees and costs, and any other just and proper relief available under GBL § 350.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the members of the Class, prays for judgment as follows:

(a)   For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure, naming Plaintiff as representative of the Class, and naming Plaintiff's attorneys as Class Counsel to represent the Class;

(b)   For an order declaring that Defendants' conduct violates the statutes referenced herein;

(c)   For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

(d)   For compensatory, statutory, and treble damages in amounts to be determined by the Court and/or jury;

(e)   For prejudgment interest on all amounts awarded;

18

(f)      For an order of restitution and all other forms of equitable monetary relief;

(g)      For injunctive relief, including an order requiring Defendants to conspicuously display the total selling price of every item offered for sale from the Trucks, as pleaded or as the Court may deem proper; and

(h)      For an order awarding Plaintiff and the Class their reasonable attorneys' fees and expenses and costs of suit.

## **JURY DEMAND**

Pursuant to Fed. R. Civ. P. 38(b)(1), Plaintiff demands a trial by jury of all issues so triable.

Dated: July 16, 2026

Respectfully submitted,

**BURSOR & FISHER, P.A.**

*/s/ Philip L. Fraietta*
    Philip L. Fraietta

Philip L. Fraietta
50 Main Street, Suite 475
White Plains, NY 10606
Telephone: (914) 874-0710
Facsimile: (914) 206-3656
E-Mail: pfraietta@bursor.com

**BURSOR & FISHER, P.A.**
Julian C. Diamond
1330 Avenue of the Americas, 32nd Floor
New York, New York 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
E-Mail: jdiamond@bursor.com

*Attorneys for Plaintiff and the Putative Class*